UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ASAZU LIMITED LIABILITY COMPANY, § § § Plaintiff, § § v. § § COLLECTANDCREATE LLC § § § § Defendant. § | CIVIL ACTION NO. 3:23-CV-1285-B |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Asazu LLC ("Asazu")'s Motion for Default Judgment (Doc. 9). For the following reasons, Asazu's Motion is **DENIED WITHOUT PREJUDICE**.

### I.

### BACKGROUND

This is an action for trademark infringement and unfair competition. For more than ten years, Asazu has continuously operated a well-known Japanese restaurant in Austin, Texas under the name and mark KOMÉ. Doc. 1, Compl., ¶¶ 1, 5. Asazu owns the trademark for KOMÉ, which represents "restaurant services featuring Japanese cuisine including sushi." Doc. 1, Compl., ¶¶ 1, 4; Doc. 1-1, Compl., Ex. A, 2. Recently, Defendant Collectandcreate LLC ("CAC") opened a restaurant in Dallas, Texas that operates under the same name and also serves Japanese cuisine including sushi. Doc. 1, Compl., ¶¶ 2, 6. CAC's use of the KOMÉ mark comes long after Asazu registered and began using the KOMÉ trademark for its restaurant. *Id.* ¶ 8. CAC is not currently authorized or approved to use the registered KOMÉ name or mark. *Id.* ¶ 14.



Figure 1. Exterior of Asazu's restaurant, "komé."



Figure 2. Exterior of CAC's restaurant, "KOME."

Asazu filed its Complaint and served CAC on June 7, 2023. Doc. 1, Compl. CAC failed to answer or file a responsive motion to the Complaint. Doc. 6, Aff. Service; FED. R. CIV. P. 12(1)(A)(i). On July 10, 2023, the Court ordered CAC to explain why it had not answered the Complaint. Doc. 7, Order Show Cause. On June 24, 2023, Asazu sought an entry of default from the Clerk and filed its Motion for Default Judgment and Permanent Injunction. Doc. 8, Request;

Doc. 9, Mot. The Clerk entered default on July 25, 2023. Doc. 10, Entry Default. To date, CAC has not responded to the Complaint. Doc. 9, Mot., 1.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the requirements for obtaining a default judgment. A plaintiff may only obtain a default judgment after securing an entry of default by the clerk of court. The entry of default occurs when the plaintiff demonstrates by affidavit or otherwise that the defendant is in default, which means the defendant "has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); Fed. R. Civ. P. 55. However, an entry of default does not automatically entitle a plaintiff to judgment. A plaintiff must apply for judgment based on the defendant's default—this is the default judgment. *New York Life Ins. Co.*, 84 F.3d at 141.

District courts are afforded wide discretion in determining whether to enter a default judgment. That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (internal footnote omitted). Courts must carefully review the pleadings to ensure that a plaintiff is entitled to a default judgment. To that end, courts have developed a three-part analysis that assesses: "(1) whether the entry of default is procedurally warranted, (2) the substantive merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings for the judgment, and (3) what form of relief, if any, a plaintiff should receive." *Griffin v. O'Brien, Wexler, & Assocs., LLC*, No. 4:22-CV-0970, 2023 WL 4303649, at *2 (E.D. Tex. June 30, 2023) (citation omitted).

Although courts have power to issue injunctions sought in motions for default judgment, the plaintiff must still demonstrate it is entitled to such relief. The Lanham Trademark Act grants courts the power to issue injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C.A. § 1116(a). Permanent injunctive relief is appropriate when the plaintiff establishes: "(1) success on the merits; (2) the failure to grant the injunction will result in irreparable injury; (3) the injury outweighs any damage that the injunction will cause the opposing party; and (4) the injunction will not disserve the public interest." *United Motorcoach Ass'n, Inc. v. City of Austin*, 851 F.3d 489, 492–93 (5th Cir. 2017) (citation omitted).

## III.

## ANALYSIS

The Court only considers whether Asazu is entitled to permanent injunctive relief, which is the sole form of relief that is properly sought in the instant motion. *Compare* Doc 1, Compl. 5–6 *with* Doc. 9, Mot., 6–9; FED. R. CIV. P. 54(c) ("A default judgment must not differ in kind from . . . what is demanded in the pleadings.").

A.   *An Entry of Default Judgment Is Procedurally Warranted.*

The Fifth Circuit sets out several factors to consider when determining whether default judgment is procedurally warranted:

> Whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Reviewing Asazu's Motion against the *Lindsey* factors, the Court finds that a default judgment is procedurally warranted. First, there are no material facts in dispute because, by the very fact of its default, CAC "admits the plaintiff's well-

pleaded allegations of fact." *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see Lindsey*, 161 F.3d at 893. Second, CAC's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Asazu's] interests." *See Ins. Co. of the W.*, 2011 WL 4738197, at *3; *Lindsey*, 161 F.3d at 893. Third, the grounds for default are clearly established given CAC's failure to respond to Asazu's Complaint or Motion since being served over five months ago. *See United States v. Washington*, 2017 WL 3394730, at *1–2 (N.D. Tex. Aug. 8, 2017) (Boyle, J.) (finding grounds for default clearly established for failure to respond for two months). Fourth, there is no evidence before the Court indicating that CAC's failure to respond is the result of a "good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. Fifth, Asazu seeks injunctive relief after a significant amount of time has passed without a response from Defendant, which "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.). Finally, the Court is not aware of any facts that would give rise to good cause to set aside the default if challenged by CAC. *See Lindsey*, 161 F.3d at 893. Thus, Asazu has met the procedural requirements for a default judgment.

B.   *There is an Insufficient Basis for Judgment in the Pleadings.*

Asazu has not shown it is entitled to judgment based on its pleading. Asazu asserts trademark infringement and unfair competition claims under the Lanham Act and a trademark infringement claim under Texas common law. Doc. 1, Compl., ¶¶ 14–19. All three claims require a plaintiff to establish (1) ownership of a legally protectable mark and (2) a likelihood of confusion resulting from defendant's use of the mark. *See Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) ("The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act.").

As to the first element, Asazu has established ownership of a legally protectable trademark by providing the KOMÉ mark's Trademark Registration form. Doc. 1, Compl., ¶ 4; Doc. 1-1, Compl., Ex. A, 2; *see Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) ("Registration of a mark . . . constitutes prima facie evidence of the mark's validity and the registrant's exclusive right to use the registered mark").

However, Asazu has not sufficiently shown the second element: that CAC's use of the KOMÉ mark "created a likelihood of confusion in the minds of potential consumers as to the source, affiliation, or sponsorship" of CAC's products or services. *Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811–12 (5th Cir. 2019) (citation and alteration omitted). "Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). In determining whether there is a likelihood of confusion, courts consider the "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products [or services]; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

The likelihood of confusion factors are non-exhaustive, fact-specific, and flexible. *Id.* However, the Court cannot grant the extraordinary relief of a default judgment when it does not possess sufficient facts to conclude there is a likelihood of confusion from Defendant's actions. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 427 (5th Cir. 2021); *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 192 (5th Cir. 2018) ("Likelihood of confusion is a question of fact."). Asazu has shown some factors indicating a likelihood of confusion. But even accepting all well-pleaded facts as true, Asazu does not meet its burden of showing consumer confusion is

probable, rather than merely possible. *See Elvis Presley Enters.*, 141 F.3d at 193; *Nishimatsu*, 515 F.2d at 1206.

1. Strength of the Mark

The first likelihood of confusion factor has a two part inquiry. A trademark's strength is determined by the classification of the mark and the mark's standing in the marketplace. *Am. Rice*, 518 F.3d at 330. Marks may be classified as: "generic, descriptive, suggestive, or arbitrary and fanciful." *Id.* The strength and therefore the protection of a mark in the marketplace increases "as one moves away from generic and descriptive marks toward arbitrary marks." *Id.* (quoting *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984)). Even if a mark is descriptive, the strength of the mark may be enhanced by the fact of its "incontestability" under the Lanham Act. *Id.* at 331; 15 U.S.C. § 1065. The second inquiry—a mark's standing—goes to marketplace recognition, and "depends on advertising, length of time in business, public recognition, and uniqueness." *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 698–99 (S.D. Tex. 2009) (citation omitted).

The KOMÉ mark is best classified as descriptive. "A descriptive term identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients." *Amazing Spaces*, 608 F.3d at 241. The word "KOMÉ" translates to "uncooked rice," which undoubtably references a staple ingredient in Japanese cuisine including sushi. Doc. 1, Compl., ¶ 1; Doc. 1-1, Compl., Ex. A, 2; *see Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 443 (5th Cir. 2000) (recognizing the doctrine of foreign equivalents "requires courts to translate foreign words into English to test them for genericness or descriptiveness"). The mark's descriptive classification suggests it is entitled to less protection in the marketplace than if it were an arbitrary mark. *Am. Rice*, 518 F.3d at 330.

The weaker classification does not doom Asazu because the Court finds sufficient pleadings to support the mark's standing and incontestability. Asazu "has used the mark KOMÉ continuously since June 15, 2011," and such use has made the mark "well-known to patrons of restaurants and bars." Doc. 1, Compl., ¶ 5. Defendant's use of "KOME" started "long after" Asazu began to use the mark and established the mark as a "brand for bars and restaurants serving Japanese food including sushi." Doc. 1, Compl., ¶ 8. Such consistent use of the mark for over a decade suggests heightened protection. *See Am. Rice*, 518 F.3d at 331 (explaining descriptive classification can become distinctive over time where mark promoted as synonymous with product). The KOMÉ mark is also incontestable. Incontestable marks are "protected from challenge by a presumption of validity." *Id.* at 331. The KOMÉ mark is incontestable because it is a registered mark that has been in "continuous use" for more than "five consecutive years subsequent to the date of such registration and is still in use in commerce." 15 U.S.C. § 1065; Doc. 1, Compl., ¶¶ 1, 5. The KOMÉ mark therefore has enhanced strength by the fact of its incontestability. *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 510 (5th Cir. 2018). Accordingly, the mark has sufficient strength to weigh in favor of a finding of likely confusion.

2. Similarity of Designs

The similarity between the marks' designs is determined "by comparing the marks' appearance, sound, and meaning." *Elvis Presley Enters.*, 141 F.3d at 201. The key inquiry "is whether, under the circumstances of use, the marks are sufficiently similar that prospective purchasers are likely to believe the two users are somehow associated." *Id.* Based on the photos of parties' restaurant names, the logos for the two marks differ in color, capitalization, and punctuation. Doc. 1, Compl., ¶¶ 1–2. Nevertheless, the dominating feature of both marks is the word "KOME," which illustrates the marks are sufficiently similar. *Viacom Int'l v. IJR Cap. Invs.*,

*L.L.C.*, 891 F.3d 178, 193 (5th Cir. 2018) ("Logos for the two marks may differ, but the words themselves are indistinguishable"); *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, 397 F. Supp. 3d 847, 863 (N.D. Tex. 2019) (Boyle, J.). In addition to the fact that the names are identical, the marks are used in the same context—as logos for Japanese restaurants. Therefore, the Court also finds that the marks' meaning is the same or likely the same. *See Elvis Presley Enters.*, 141 F.3d at 201. The similarity of the marks therefore weighs in favor finding that reasonable consumers would likely be confused as to the affiliation between Asazu and CAC's restaurants.

### 3. Similarity of Services

"The greater the similarity of products and services, the greater the likelihood of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009) (omitting citation). The parties need not be in direct competition for a court to find similarity between their products and services. *See Prof. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 669–70 (5th Cir. 1975). Both Asazu and CAC utilize the "KOME" mark to offer Japanese cuisine featuring sushi. Doc. 1, Compl., ¶¶ 1–2, 6. While the Court is not given more facts, such as the formality of each party's restaurant services, the Complaint sufficiently shows a similarity of services. Therefore, this factor weighs in favor of a finding of likely confusion.

### 4. Identity of Retail Outlets and Customers

"The greater the overlap between the outlets for, and consumers of, the services, the greater the potential for confusion." *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 512 (5th Cir. 2018). When the products or services do not compete, "the confusion at issue is one of sponsorship, affiliation, or connection." *Elvis Presley Enters.*, 141 F.3d at 202. The danger of confusion as to affiliation increases when the junior mark user is servicing a market "into which the senior [mark] user would naturally expand." *Id.*

The parties' retail outlets are facially similar as single-standing Japanese restaurants and bars serving sushi for dine-in services. *See* Doc. 1, Compl. ¶¶ 1–5. However, the similarity between the parties' consumers is not at all clear. Part of the inquiry appears to rest the distance between the parties' establishments. *See Cross Trailers, Inc. v. Cross Trailer Mfg. & Sales, LLC*, 363 F. Supp. 3d 774, 783 (W.D. Tex. 2018) (confirming applicability of considering geographically distinct markets). As it stands, given the proximity between Dallas and Austin, it is only possible and not probable that there is some overlap in the parties' consumer base. *Elvis Presley Enters.*, 141 F.3d at 193. The Court does not have other facts to sufficiently support a finding of similar consumers.

By way of illustration, the Complaint does not plead any facts or empirical data, such as demographics or consumer surveys, that would suggest the parties' restaurants have overlapping consumer bases. *See Viacom Int'l*, 891 F.3d at 195; *cf. Lettuce Entertain You Enterprises, Inc. v. Hotel Magdalena Joint Venture*, LLC, No. 1:21-CV-198-RP, 2023 WL 2817719, at *8 (W.D. Tex. Apr. 6, 2023). In fact, it is not clear to the Court whether CAC's customers even know of Asazu's restaurant or its reputation to make a connection between the two restaurants. *T.G.I. Friday's, Inc. v. Int'l Rest. Grp., Inc.*, 569 F.2d 895, 899 (5th Cir. 1978) (affirming district court finding that "the physical similarities between the restaurants were irrelevant to the issue of infringement since the [Plaintiff's] chain had no reputation in the [Defendant restaurant's] area.").

The Complaint also does not plead any facts suggesting the public perceives Asazu as likely to "naturally expand" into Dallas such that the Court may infer similar customers. *See Elvis Presley Enters.*, 141 F.3d at 202. Therefore, the Court is left to guess whether the public has reason to believe that Asazu is branching out to nearby cities. Given the factual holes as to similarity of consumers, the Court does not find this factor supports likely confusion.

5. <u>Defendant's Intent</u>

"Although not necessary to a finding of likelihood of confusion, a defendant's intent to confuse may alone be sufficient to justify an inference that there is a likelihood of confusion." *Streamline Prod.*, 851 F.3d at 455 (quotation omitted). "If there is no evidence of intent to confuse, then this factor is neutral." *Viacom Int'l*, 891 F.3d at 195 (citing *Xtreme Lashes*, 576 F.3d at 229). Asazu pleads only that CAC had constructive notice of Asazu's rights to the KOMÉ mark at the time CAC began its use of the mark. Doc. 1, Compl., ¶¶ 7–8; 15 U.S.C. § 1072 (defining registration of mark as constructive notice of ownership). A junior user's mere awareness of the senior user's use or claim to the same mark does not establish bad intent. *Id.* at 456 (citation omitted). Therefore, CAC's constructive notice does not establish an intent to confuse. *Streamline Prod.*, 851 F.3d at 456.

Without any other facts supporting CAC's intent to confuse, the Court cannot analyze this factor further. Had Asazu pled more facts such as a similarity in the restaurants' distribution methods for services, packaging of food services, or menu items—besides sushi, more generally—the Court might be able to infer that CAC intends to pass off its restaurant as affiliated with Asazu's brand. *See, e.g.*, *Viacom Int'l*, 891 F.3d at 196. This factor thus is neutral as to likely confusion.

6.   <u>Actual Confusion, Advertising Media, & Degree of Care</u>

The remaining factors have a neutral effect on the Court's analysis. Actual confusion is the "best evidence of a likelihood of confusion." *Viacom Int'l*, 891 F.3d at 197 (quoting *Elvis Presley Enters.*, 141 F.3d at 203–04). Asazu alleges CAC's use of the KOMÉ mark "has already caused confusion among the relevant public," but it offers no factual support for this allegation nor clarification as to the meaning of "relevant public." Doc. 1, Compl., ¶ 9. Therefore, CAC is not deemed to accept as true Asazu's mere supposition of actual confusion. *Nishimatsu*, 515 F.2d at 1206. Nothing in the Complaint addresses the two remaining factors: similarity of advertising

media used by CAC and the degree of care exercised by potential consumers. Therefore, the Court finds these factors neutral as to likely confusion.

Weighing the factors in this case, the Court concludes that there is an insufficient basis to conclude there is a likelihood of confusion among consumers as to the affiliation between Asazu and CAC's restaurants. The two factors of "particular prominence," are notably absent: actual confusion and bad intent. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020). And only three out of the eight factors favor a finding of likely confusion.

Unlike the factual record here, the records of the cases cited in Asazu's Motion contain account for all or almost all of the likely confusion factors. *See* Doc. 9, Mot., 7. For instance, in *Neighbor Favor Inc. v. Hey Favor, Inc.*, all but two of the factors weighed in favor of a finding of likely confusion, and evidence included a showing of the actual confusion. 2023 WL 2550120, at *9 (W.D. Tex. 2023). Asazu also cites to *Ci Ci Enterprises, L.P. v. Fogel Enterprises, Inc.*, which dealt with an obvious case of confusion caused by a defendant-franchisee improperly using plaintiff-franchisor's franchise mark. 2023 WL 2731048 (N.D. Tex. 2023) (Brown, J.). The marks here do not come from the same franchise. Therefore, unlike the mark use in *Ci Ci Enterprises*, CAC's use of the KOMÉ mark does not present as straightforward a case of confusion as to its restaurant's affiliation. The Court ultimately does not have sufficient factual evidence to conclude that Asazu has successfully established CAC's liability as to trademark infringement and unfair competition.

Asazu also has not met it burden of showing irreparable harm. The discussion of harm in Asazu's Motion assumes Plaintiff has shown a likelihood of success on the merits of its claims, and therefore entitlement to "a rebuttal presumption of irreparable harm." Doc. 9, Mot., 6–7. Here, however, the Court must find actual success on the merits because the relief sought is a permanent rather than preliminary injunction. *United Motorcoach Ass'n, Inc.*, 851 F.3d at 493. Moreover,

Asazu's mere allegation that CAC "is causing irreparable harm to Asazu" is conclusory. Doc. 1, Compl., ¶ 15; *Nishimatsu*, 515 F.2d at 1206. Asazu's Motion therefore does not adeequately show it is under threat of irreparable harm.

### IV.

### CONCLUSION

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** Asazu's Motion for Default Judgment (Doc. 9). Should Asazu choose to file a renewed motion for default judgement, Asazu must first amend its complaint to address the factual deficiencies detailed in this Order. Asazu should then serve a copy of any amended complaint on CAC. If CAC does not answer or otherwise respond to Asazu's amended complaint within the time allowed under the Federal Rules of Civil Procedure, then it may again move for default judgment following the procedures outlined in Rule 55.

SO ORDERED.

SIGNED: November 28, 2023.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE